735 So.2d 1281 (1999)
Johnny HOSKINS n/k/a/ Jamil Alle, Appellant,
v.
STATE of Florida, Appellee.
No. 84,737.
Supreme Court of Florida.
May 13, 1999.
Rehearing Denied June 21, 1999.
James B. Gibson, Public Defender and James R. Wulchak, Chief, Appellate Division, Assistant Public Defender, Seventh Judicial Circuit, Daytona Beach, Florida, for Appellant.
Robert A. Butterworth, Attorney General and Kenneth S. Nunnelley, Assistant Attorney General, Daytona Beach, Florida, for Appellee.
PER CURIAM.
In Hoskins v. State, 702 So.2d 202 (Fla. 1997), we remanded this case to the trial court for the limited purposed of having the trial judge order that a PET-scan be conducted on Johnny Hoskins, who had been sentenced to death for first-degree murder. In the Hoskins opinion, we stated:
After the PET-scan is conducted, the trial judge shall conduct an evidentiary hearing for the purpose of determining whether the PET-scan shows an abnormality and, if so, whether the results of the PET-scan cause Dr. Krop to change his trial testimony. If the trial judge finds in the affirmative, then a new penalty phase proceeding shall be conducted. Our remand is limited solely to this issue, and we direct that the PET-scan and hearing be conducted within sixty days from the date this opinion becomes final. During the pendency of this remand, the sentence of death in this cause shall be held in abeyance. After the trial judge makes a determination on this issue, this case shall be returned to this Court.
702 So.2d at 210-11.
We have now received the trial judge's determination on this issue. Following the PET-scan and the evidentiary hearing, the trial judge concluded that the PET-scan did show an abnormality and that, as conceded by the State, Dr. Krop's testimony changed as a result of the PET-scan.[1] Because the trial judge has found in the affirmative, we vacate the sentence of death imposed on Hoskins and remand this cause for a new penalty phase proceeding.
It is so ordered.
HARDING, C.J., SHAW and ANSTEAD, JJ., and OVERTON, Senior Justice, concur.
WELLS, J., dissents with an opinion.
WELLS, J., dissenting.
I dissent from approving the order of the circuit court dated October 2, 1998, in respect to requiring a new sentencing proceeding on the basis of the PET-scan.
In the majority opinion in which this Court remanded this case to the trial court, the majority opinion states:
After the PET-scan is conducted, the trial judge shall conduct an evidentiary hearing for the purpose of determining whether the PET-scan shows an abnormality and, if so, whether the results of *1282 the PET-scan caused Dr. Krop to change his trial testimony.
Hoskins v. State, 702 So.2d 202, 210-11 (emphasis added).
The evidentiary hearing before the trial court which led to the October 2 order clearly did not contain competent, substantial evidence as to the first issue which was to be decided on the remand, i.e., whether the PET-scan performed subsequent to our decision was performed or read in accordance with acceptable medical procedures. The sole testimony before the trial judge and in the record before us is from a psychologist who admitted that he has no qualifications to read the radiological test and who relied upon the report of another psychologist who has neither the required license nor the expertise to read this radiological test. No PET-scan or radiology report was in evidence as to the PET-scan.
Dr. Krop's testimony was:
[At p. 26] Based on Dr. Wood's [a psychologist's] report of the PET scan that was conducted I would rely on his opinion that the PET scan is abnormal.
[At p. 45] If the PET scan results were not as they are represented, then we'd pretty much be back to square one. [At p. 67] Dr. Krop agrees that a PET scan is a procedure that only a medical doctor can perform.

[At p. 69] Dr. Krop says he did not ask Dr. Wood the name of any qualified neuroradiologist, radiologist, or medical doctor that actually looked at the PET scan results.

[At p. 70] Dr. Krop says, "What I see in this report is Dr. Wood's interpretation of the results. I do not see Dr. Wood actually look at the pictures and came up with the specific data. I don't know how that data is arrived at."
(Emphasis added.)
We totally confuse this case, now that it is back to us, by ignoring that the record has this void on the issue of whether there is competent evidence as to whether the PET-scan shows an abnormality. Without such evidence, the remand issues have only partially been answered, and the answer is based on incompetent evidence.
Moreover, this record is totally devoid of any Frye testing by the trial court as to the use of a PET-scan for this purpose. Such Frye testing is necessary to determine whether the record substantiates that this PET-scan, whatever it indicates when there is competent evidence as to that, is a test which is commonly accepted by psychologists as a radiological examination which supports the psychological opinions given by Dr. Krop.
However, the first glaring deficiency in this record is that there is no competent evidence as to what this PET-scan indicates.
NOTES
[1] The court noted that it did not reach the validity of the PET-scan test nor did it conduct a Frye hearing. See Frye v. United States, 293 F. 1013 (D.C.Cir.1923). The fact that the trial judge did not consider these issues at the evidentiary hearing does not affect our decision to remand this case. Those are factual issues that must be considered after remand as part of the new sentencing proceeding.